IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BERNADINE CHAVEZ,

              Plaintiff,

  vs.                                          CIVIL NO. 97-1074 LFG/DJS

BERNALILLO COUNTY COMMISSIONERS;
CITY OF ALBUQUERQUE and ANNETTE
KRAWIC,

              Defendants.

## MEMORANDUM AND ORDER
## GRANTING CITY'S MOTION FOR SUMMARY JUDGMENT

        THIS MATTER is before the Court on the City of Albuquerque's ("City") Motion for

Summary Judgment [Doc. 17].  The Court considered the City's motion, Plaintiff Bernadine Chavez'

("Chavez") response in opposition and the City's reply, and determines that oral argument is not

necessary.  This matter may be resolved based on the parties' submissions.

### Summary Judgment Standards

        Summary judgment is appropriately entered when the moving party can demonstrate that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598

(1970); Quaker State Minit-Lube, Inc. v. Firemen's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir.

1995).  The party moving for summary judgment must shoulder the initial burden of establishing the

absence of a question of fact.  Adickes, 398 U.S. at 144.  That burden is carried when the moving

party demonstrates that the undisputed facts entitle the moving party to judgment.  Celotex Corp. v.

Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986).  That initial burden can be shouldered when the moving party demonstrates by way of admissible evidence, by deposition, answers to interrogatories, admissions, affidavits or documentary evidence that the undisputed facts entitle the moving party to judgment.  Id.  However, Rule 56 further provides that the moving party may request summary judgment "with or without supporting affidavits."  Such is the case here.  The City did not submit affidavits in support of its motion, but simply relies on the allegations of the complaint and two exhibits which, collectively, establish a prima facie showing of an entitlement to judgment as a matter of law.

A party opposing summary judgment must do more than rely on its pleadings or mere argument or contention to defeat a prima facie showing of an entitlement to judgment.  Federal law provides that the party opposing the motion for summary judgment must affirmatively come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.  Celotex Corp., 477 U.S. at 324.  This requirement is made clear in the rule itself:

> [An adverse party may not rest upon mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56.  Thus, the burden on the party opposing a motion for summary judgment is significantly great when the moving party has successfully made a prima facie showing entitling it to judgment.  The test is not whether the party opposing the motion will be able to demonstrate a material factual dispute at trial, but, rather, whether that party can demonstrate the presence of a material, factual dispute in response to the moving party's prima facie showing.

**Present Motion**

In support of its motion for summary judgment, the City submits a statement of undisputed facts.  Those facts are as follows:

1.   On September 15, 1995, Annette KRAWIC ("KRAWIC"), a BERNALILLO County Environmental Health Department employee, signed a criminal complaint against Chavez for failure to maintain her property, which is located on Tahoe Place, free of litter, in violation of County Ordinance 5, § 25.  (Complaint, p. 2, ¶ 7).

2.   County Ordinance 5, § 25 states in pertinent part: "The owner or person in control of any private property shall at all times maintain the premises free of litter."  (Doc. 18, Ex. A).

3.   The county ordinance does not mention the word weeds.  (Complaint, p. 2, ¶ 8).

4.   The criminal complaint filed by county employee KRAWIC failed to indicate that it was issued under a county ordinance which makes no reference to weeds.  (Complaint, p. 2, ¶ 8).

5.   Based on the criminal complaint filed by KRAWIC, a criminal summons was signed and issued on September 28, 1995 by Metropolitan Court Judge Theresa Gomez.  (Complaint, p. 2, ¶ 8).

6.   The criminal summons ordered Chavez to appear for a hearing before Judge Gomez for Chavez' alleged failure to fulfill her duty as owner "to remove weeds."  (Complaint, p. 2, ¶ 8).

7.   On September 29, 1995, the Metropolitan Court Clerk mailed a notice of hearing to Chavez at her Tahoe Place address.  (Complaint, p. 3, ¶ 10).

8.  The notice of hearing was marked "Return to Sender" by the United States Post Office and returned to the court on October 10, 1995.  (Complaint, p. 3, ¶¶ 10-11).

9.  The court received the returned notice of hearing, logged it and placed it in Chavez' file. (Complaint, p. 3, ¶ 11).

3

10.  On October 13, 1995, the court held a hearing on the criminal complaint against Chavez. (Complaint, p. 3, ¶ 12).

11.  Because she did not receive the notice of hearing, Chavez did not appear for the hearing. (Complaint, p. 3, ¶ 12).

12.  On October 18, 1995, Judge Gomez issued a bench warrant for Chavez' arrest because she failed to appear for the October 13, 1995 hearing.  (Complaint, p. 3, ¶ 12; bench warrant, Doc. 18, Ex. B).

13.  One and half years later, the City, through Mayor Martin J. Chavez, initiated a program whereby the Albuquerque Police Department was to arrest everyone with outstanding warrants. (Complaint, p. 3, ¶ 13).

14.  On April 17, 1997, while Chavez was drawing her bath, she heard officers from the Albuquerque Police Department announce their presence through a loudspeaker and demand that she come out of her home.  (Complaint, p. 3, ¶ 13).

15.  Chavez was getting dressed as the Albuquerque Police Department officers continued to demand that she open the door.  (Complaint, p. 3, ¶ 13).

16.  When Chavez opened the door and came out, the officers arrested her, handcuffed her, and placed her in a patrol car.  (Complaint, p. 3, ¶ 14).

17.  The police transported Chavez to the BERNALILLO County Detention Center where she was photographed, fingerprinted, and booked for failure to appear for the hearing on the criminal complaint charging her with failure to cut her weeds.  (Complaint, p. 3, ¶ 15).

18.  Chavez was held at the Bernalillo County Detention Center for approximately ten hours. (Complaint, p. 3, ¶ 16).

4

19.  Based on the facts described above, Chavez filed a complaint alleging constitutional rights violations and state tort claims.  (Complaint, p. 1, ¶¶ 1 & 2).

20.  Chavez claims she was falsely arrested, unreasonably seized and falsely imprisoned. (Complaint, p. 3, ¶ 14; p. 4, ¶¶ 16 & 17).

21.  Chavez also claims that Bernalillo County "failed to adequately oversee and correct complainant's submissions to Judge Gomez and either failed to train Annette Krawic or conspired to charge Bernadine Chavez with a crime which did not exist."  (Complaint, pp. 2 & 3, ¶ 9).

## Analysis

Chavez' claims against the City are sketchy.  Chavez contends that Krawic issued the complaint and,

> [A]s an intentional violation of Bernadine Chavez' constitutional rights as well as those of other citizens, Annette Krawic altered the language of the complaint to manufacture a violation when she knew or should have known one did not exist.  Ms. Krawic failed to inform Judge Gomez that the complaint was issued under a county ordinance which makes no reference to weeds.

Chavez' allegation has no evidentiary support by way of affidavit, answer to interrogatory, deposition response, admission, or other admissible evidence.  This assertion is nothing more than counsel's argument or contention and cannot be considered as evidence.  However, even assuming the statement as true, Krawic is not a City employee, but is employed by the county.  As part of her responsibilities as an employee of Bernalillo County's Environmental Health Department, Krawic signed a criminal complaint against Chavez because of the condition of Chavez' rental property.  The complaint was presented to a Metropolitan Court judge, who has jurisdiction over violations of county ordinances.  The judge set a date for the hearing, issued a summons, and mailed the summons

5

to Chavez.  The City has no supervisory authority over Krawic, and her acts are not attributable to the City.  Furthermore, the Metropolitan Court is a statutorily established court and part of the state magistrate court system.  <u>See</u> NMSA 1978 §§ 34-8a-1, 34-8a- 2.  It is not a political subdivision or a department of the City of Albuquerque.  Thus, the City has no supervisory or oversight responsibility over the Metropolitan Court.  The alleged acts or omissions of a county employee or the Metropolitan Court cannot be attributed to the City.

Even a liberal reading of Chavez' complaint shows only vague allegations directed against the City.  Chavez contends that the police "falsely arrested and handcuffed her and placed her in the patrol car."  Yet, it is clear that the City police who effected the arrest were acting pursuant to a bench warrant issued by the Metropolitan Court.  Chavez argues that the City police officers were not acting pursuant to a valid warrant because "the crime enumerated therein did not exits" and that a reasonably prudent officer would have taken notice of the violation which was the basis of the warrant.  This argument is faulty for two reasons.  First,  the bench warrant was issued because of Chavez' failure to appear.  Thus, she was not arrested because she failed to cut weeds, but, rather, because she failed to appear in response to the court's summons.  Chavez' argument that the crime "did not exist" has no validity in reference to the arrest warrant.  Even if Chavez may have ultimately been acquitted of the offense, she was not entitled to ignore an order of the court requiring her to appear in answer to the charge.  Secondly, Chavez' "reasonably prudent police officer" argument fails because this rationale requires a police officer to second guess the presiding judge, and if the police officer thinks that the warrant shouldn't have been issued, to ignore the execution of the warrant.  This is impermissible.

In <u>Valdez v. City & County of Denver</u>, 878 F.2d 1285 (10th Cir. 1989), the Tenth Circuit rejected a litigant's claim for damages premised under the same rationale.  The Court of Appeals stated, "We hold than an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." <u>Id.</u> at 1286.  The circuit recognized that the power to execute judicial decrees was an integral part of the judicial process and that officers, acting on facially valid warrants, ought to enjoy the same type of immunity available to judges.

> Enforcing a court order or judgment is intrinsically associated with a judicial proceeding. [cite omitted].  If losing parties were free to challenge the will of the court by threatening its officers with harassing litigation, the officers might neglect the execution of their sworn duties.   As the Ninth Circuit aptly reasoned: "The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." [cite omitted].   Absolute immunity for officials assigned to carry out a judge's orders is necessary to ensure that such officials can perform their function without the need to secure permanent legal counsel.  A lesser degree of immunity could impair the judicial process.

<u>Id.</u> at 1288.

In <u>Valdez v. City & County of Denver</u>, the Circuit noted that police officers are not required to act as "pseudo-appellate courts" scrutinizing judges' orders.  <u>Valdez</u> at 1289, citing <u>Henry v. Farmer City State Bank</u>, 808 F.2d 1228, 1239 (7th Cir. 1986).  A court order is "facially valid if it is issued by a judge acting within the judge's jurisdiction." <u>Turney v. O'Toole</u>, 898 F.2d 1470 (10th Cir. 1990).  Here, the judge's warrant was signed, dated and dealt with a matter clearly within the court's jurisdiction.

The Metropolitan Court had jurisdiction over the criminal charge lodged against Chavez. NMSA 1978 § 34-8a-3 provides, "[A] Metropolitan Court shall have jurisdiction within the county

boundaries over all: (1) offenses and complaints under ordinances of the county and of any municipality located within the county in which the court is located . . . ."  Thus, when the court set a hearing and issued a summons, it was acting within the scope of its authority.  Similarly, when it issued a bench warrant due to Chavez' failure to appear, the court acted within specific statutory authority.  New Mexico law provides that magistrates and metropolitan court judges may issue subpoenas and warrants and may also punish for contempt.  See NMSA 1978 §§ 34-8A-3, 35-3-4.  Because the court was acting within its jurisdiction, The Metropolitan Court enjoys absolute immunity.  Pierson v. Ray, 386 U.S. 547, 87 S. Ct. 1213 (1967); Stump v. Sparkman, 435 U.S. 349, 98 S. Ct. 1099 (1978).

In Turney v. O'Toole, id., the Tenth Circuit rejected a claim that a warrant was not valid if issued in violation of a statute.  Turney argued there that the warrant used to arrest him was not "facially valid" because it violated several Oklahoma statutes.  This is similar to Chavez' argument that the warrant issued in connection with the complaint was not valid because failure to cut weeks was not a violation of the county's ordinance.  In Turney, the court rejected the contention saying that "facially valid" does not mean "lawful" and that even an erroneous order could be valid.  Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689 (1979).  The order was not issued by a judge acting "in the clear absence of all jurisdiction."  Stump v. Sparkman.  The court rejected the attorney's contention that the officers were required to scrutinize the court's order to determine whether it measured up to statutory standards.  The court stated,

> To allow plaintiffs to bring suit any time a state agent executes a judicial order which does not fulfill every legal requirement would make the agent a "'lightening rod for harassing litigation aimed at judicial orders.'" [cite omitted] Simple fairness requires that state officers "not be called upon to answer for the legality of decisions

which they are powerless to control."(quoting <u>Valdez v. City &</u>
<u>County of Denver</u>, 878 F.2d at 1289).

<u>Turney</u>, 898 F.2d at 1473.  So, too, here.  The officers who effected the arrest were not required to

look beyond the face of the warrant to determine if the process was valid.

While it may be reasonable to argue that the Metropolitan Court shouldn't have issued a

bench warrant for Chavez' arrest when there was evidence in the court file that Chavez had not

received notice of the hearing, Chavez' claim must still fail.  The judge's actions in issuing the bench

warrant are clothed in absolute immunity.  Even if, in a more deliberate moment, it appears that

another course of conduct would have been wiser or more prudent, the Metropolitan Court and its

officers are absolutely immune from liability for errors, if any, in issuing the warrant.

In sum, it is clear that the City police officers who executed the warrant acted pursuant to an

order, which this Court concludes was facially valid.  Therefore, the officers enjoy the same type of

immunity as does the court.  If the officers did not wrong, it follows that the City cannot be liable.

Indeed, even if  the officers had violated Chavez' constitutional rights, the City would still be immune

because liability under Section 1983 cannot be premised under a *respondeat superior* concept.

<u>Monell. v. Department of Social Services of City of New York</u>, 436 U.S. 658, 98 S. Ct. 2018 (1978).

Apart from Chavez' claim that the officers illegally arrested her on an invalid warrant, she

contends that her constitutional rights were violated as a result of the delay in her release from

custody.  Chavez argues that her daughter-in-law posted bond in early afternoon, at approximately

2:00, but she was not released until nearly 10:00 p.m.  Chavez does not specify the nature of claims

against the City in reference to the delay in release.  Assuming, however, that Chavez claims the City

is responsible for the delays, her claims still fail.  Chavez has not identified any specific act by any

specific municipal actor that resulted in a deprivation of her rights.  She fails to identify any City employee who acted with the deliberate indifference or reckless disregard of her rights as contemplated by Section 1983 litigation.  Daniels v. Williams, 474 U.S. 327, 329, 106 S. Ct. 622, 663 (1986)(The Due Process clause is simply not implicated by a negligent act of an official causing unintended loss of life, liberty, or property); accord, Davidson v. Cannon, 474 U.S. 344, 347-348, 106 S. Ct. 668, 670 (1986).  An allegation of a single, isolated act, which may be nothing more than negligence, is insufficient, as a matter of law, to state a claim under Section 1983.  Wallace v. Conroy, 945 F. Supp. 628 (S.D.N.Y. 1996).

Chavez' Section 1983 and unreasonable seizure claim cannot, as a matter of law, be asserted against the City under a *respondeat superior* theory.  Monell v. Department of Social Services of City of New York.  Moreover, Chavez failed to articulate any municipal custom or policy that resulted in the deprivation of her rights.  Even assuming that a municipal employee was negligent or, even, intentionally violated Chavez' rights in failing to release her from custody, in the absence of a showing that the employee's action was taken pursuant to a municipal custom or policy, liability does not extend to the City, but only to the employee in an individual capacity.

> A municipality cannot be held liable solely because it employs a tort-
> feasor . . . or, in other words, a municipality cannot be held liable
> under Section 1983 on a respondeat superior theory.

Id., 436 U.S. at 691; see also Sauers v. Salt Lake County, 1 F.3d 1122, 1129 (10th Cir. 1993).

Chavez' complaint makes no mention of any municipal custom or policy.  Indeed, the only reference to a City policy appears in her claim that the City's Mayor, Martin Chavez, decided to initiate a "program to send the Albuquerque Police Department to round up and arrest everyone with outstanding warrants."  There is simply nothing illegal or unconstitutional about a directive to enforce

the law.  Moreover, Chavez failed to demonstrate that the Mayor's program "to roundup and arrest everyone with outstanding warrants" constitutes any kind of violation, much less a violation of constitutional rights.

Having considered the motion, response and reply, the Court determines that the City made a *prima facie* showing of its entitlement to judgment, and that Chavez failed to come forward with evidence to rebut the showing.  The City is entitled to judgment as a mater of law.  The Court will dismiss Chavez' Section 1983 claims against the City with prejudice.  The Court will also dismiss, with prejudice, Chavez' state tort claims premised on action by City police.  Chavez' negligence claim against the City relating to the delay in her release from custody is not dismissed.  That matter may be addressed by separate motion.

Lorenzo F. Garcia
United States Magistrate Judge

COUNSEL FOR PLAINTIFF:
James C. Ellis, Esq.

COUNSEL FOR BERNALILLO
COUNTY COMMISSIONERS
and ANNETTE KRAWIC:
Paul T. Yarbrough, Esq.

COUNSEL FOR CITY OF ALBUQ:
Jeffrey L. Baker, Esq.
Christina Anaya, Esq.

11